

ATTORNEYS AT LAW

**Chrysler Building**
405 Lexington Avenue | 36th Floor
New York, New York 10174-3699
212.785.2577 | fax 212.785.5203
www.carltonfields.com

Atlanta
Hartford Los
Angeles
Miami
**New York**
Orlando
Short Hills, NJ
Tallahassee
Tampa
Washington, DC
West Palm Beach

**Michael L. Yaeger**
Shareholder
212.380.9623 (Direct)
myaeger@carltonfields.com

October 4, 2020

By ECF

The Honorable Denis R. Hurley
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

    Re:    *United States v. Girnun*, Case No. 19 CR 416 (DRH) (ARL) (E.D.N.Y.)

Dear Judge Hurley:

    We are counsel for Geoffrey Girnun. This letter brief responds to the Government's Sentencing Memorandum (Dkt 57) filed Friday, October 2, 2020—four days before the scheduled sentencing hearing of October 6, 2020, and ten days after Mr. Girnun filed his Sentencing Memorandum (Dkt 54) in anticipation of the previously scheduled sentencing date.

    We write briefly to correct the often misleading and sometimes false information in the Government's table of purportedly "similarly situated defendants." Dkt 57 at 12-13. (The rest of our response to its filing will be spoken at the hearing.) A review of the relevant records on PACER shows that none of the 9 defendants in that table have the same Guidelines range as Geoff Girnun. All are actually in higher Guidelines ranges. Six had loss amounts higher than the figures listed on the Government's table, which oddly chose to offer "Loss or Forfeiture" amounts instead of loss. *Id.* at 12. And three were actually sentenced under Guidelines other than U.S.S.G. § 2B1.1. For those reasons, and others explained below, the Court should reject the Government's unwarranted suggestion that similarly-situated defendants in the E.D.N.Y. typically receive prison time. In fact, as demonstrated in Harvard Law School Professor Crystal Yang's Declaration (Dkt 54, Ex. A), most receive probation.

    Because the Government seeks a "Guidelines sentence" for Geoff, it should compare him to people in the same position on the Sentencing Table. By definition, a Guidelines sentence is one within the specific range of months where the applicable Guideline, offense level, and criminal history place a defendant. The Guidelines Manual is a several hundred page book designed to place a man on a one-page grid; the Guidelines' view is that people placed in the same position on the grid should receive similar sentences. Here, that is the range of months for defendants with Guideline § 2B1.1, offense level 17, and criminal history I. To be subject to the same Guideline and in the same position on the

Sentencing Table is precisely what it means to be "similarly-situated" with respect to the Guidelines. Accordingly, the Government should compare Geoff to other people in the same spot on the Sentencing Table.

But, despite its professed loyalty to the Guidelines, the Government completely rejects them, and the data collected by the U.S. Sentencing Commission, in favor of an anecdotal table of just 9 defendants, all of whom were **not** in the same position on the Guidelines table. Even in the Government's telling, 8 of the 9 defendants on its table were in higher ranges than 24-30 months, and in fact all of them were. Sclafani, the one defendant that the Government describes as being in the 24-30 month Guidelines range, was actually in the 27-33 month range. *See* Dkt 80 at 27. Moreover, Mr. Sclafani's case is also distinguishable in that he continued to commit fraud even after arrest. He also had hundreds of victims. As the corrected and amended table below shows, all of the other cases on the table were also either inaccurately or misleadingly described:

| Defendant | Case/Judge | Type of Crime | Loss | Guidelines Range | Sentence/ Judgment date | Other Facts |
|---|---|---|---|---|---|---|
| Sclafani | 14-CR-639 (DRH) | Mail Fraud | $150,000 (Dkt 80 at 13)[1] | 27-33 months (Dkt 80 at 27) | 30 months; 9/30/16; amended 10/31/18 | • Gov't chart has incorrect guidelines range and loss<br>• 100s of victims (Dkt 60)<br>• Illegal conduct continued after injunction from NYAG and even arrest (Dkt 60 at 3) |
| Solnin | 12-CR-40 (JMA) | Mail Fraud | $350,000 | 27-33 Months | 30 months; 1/19/17 | • 55 victims<br>• Caused bankruptcies<br>• Threatened victims with financial retribution |
| Goodrich | 16-CR-630 (ENV) | Securities Fraud | $53.9 million (Dkt 12 at 10) | 60 months | 41 months; 7/12/18 | • Over 100 victims (Dkt 12 at 16)<br>• Total restitution was $2,329,007 (Dkt 16 at 6)<br>• Gov't chart misleadingly cited $3,938 forfeiture, not $53.9 million loss |
| Zaslavsky | 17-CR-647 (RJD) | Securities Fraud | $300,000 | 30-37 Months | 18 months; 11/18/19 | • Continued fraud even after SEC stepped in (Dkt 50 at 8-9)<br>• Over 2000 victims (*Id.*) |

---

[1] Restitution was $54,924.40 since some victims had been repaid (Dkt 80 at 6-9; Min. Entry 109; Judgment, Dkt 113 at 6).

| Prasad | 19-CR-73 (CBA) | Access device fraud | $776,649 (Dkt 78) | 27-33 Months | 18 months; 2/2/20 | • Gov't chart says "Loss or Forfeiture Amt." was $55,000 but Guidelines loss for conspiracy was $776,649 |
| --- | --- | --- | --- | --- | --- | --- |
| Bosco, N. | 19-CR-443 (CBA) | Extortion | $5,000 fine (not loss) | 27-33 Months | 6 months; 9/22/20 | • Threats of violence to collect a gambling debt (Dkt 61)<br>• USSG 2E1.2, not 2B1.1<br>• Crim. history of II, not I |
| Bhambhani | 17 CR 626 (CBA) | Health Care Fraud | Over $1.5 million (Dkt. 42 at 6)[2] | 46-57 months | 34 months; 9/11/18 | • Attempted to flee to India (Dkt 42 at 2)<br>• USSG 2B4.1(a), not 2B1.1 |
| Meliksetyan | 17-CR-351 (ARR) | Health Care Fraud | Over $550,000 (Dkt 33 at 4) | 30-37 months | 15 months; 6/5/18 | • Gov't chart cited lower restitution figure of $386,287, not higher Guidelines loss figure |
| McRae | 18-CR-85 (MKB) | Bank Fraud | Loss over $550,000; $1,334,544 restitution | 37-46 months | 36 months (12 mo., plus 24 mo. for aggravated identity theft), 2/26/20 | • $1,334,544 restitution, and loss over $550,000 but Gov't chart cited $200,000 forfeiture<br>• USSG 2D1.1, not 2B1.1 (Dkt 88 at 2)<br>• Over 10 victims (*Id.*)<br>• Guidelines range of 37-46 mos., but effective range of 61-70 mos. due to 24-mo. mandatory minimum for Aggr. ID charge (Dkt 88 at 2) |

  As the corrected and amended table shows, none of the cases cited on the Government's table are actually similar under a Guidelines analysis, and many are wildly different. For the *Goodrich* case, the Government choose to include only the forfeiture amount of $3,938 in its odd "Loss or Forfeiture Amt." column, but a review of the record shows that the Guidelines loss amount was actually $53,900,000. That is, $53.9 million; a number more than 16,680 times larger than the dollar figure the Government used to describe the case. The effect of the Government's choice to list about $4000 was to make it seem that a significant prison term would be more reasonable for a defendant with a loss figure of $225,000. Citing the more salient $53.9 million loss figure would have made $225,000 look far different.

  The other defendants in the Government's table also have notable differences from Geoff. Seven had higher loss amounts than Geoff, and six had higher loss amounts than the financial figures the

---

[2] The Government's chart cited a $217,364 restitution figure in the judgment, not the higher loss figure.

3

Government listed in its table. Three continued to break the law after arrest or SEC action. Four had either dozens, hundreds, or thousands of victims. One was charged with a violent crime. In sum, the Government's table in its Sentencing Memorandum provides no useful guidance to this Court—especially in relation to the Guidelines.

The Court should reject that table and instead consider Professor Yang's analysis of data collected by the U.S. Sentencing Commission, which is more on point, cogent, and robust. As the Government concedes, the Guidelines' claim to legitimacy is ultimately based on the assumption that they derive from careful study of empirical evidence. Dkt 57 at 11. Unfortunately, as we discuss in our Sentencing Memorandum, that assumption is unfounded for the fraud Guidelines. The enhancements in § 2B1.1 are not well-rooted in empirical evidence, and, with the operation of inflation, they have grown less tethered to the evidence with each passing year since 1987. Dkt 54 at 25-26. But, regardless, since the Guidelines' claim to legitimacy is rooted in claims of empirical rigor, the Government has no basis to reject the straightforward and thorough empirical work of Professor Yang. Instead of looking at just 9 defendants, Professor Yang looked at 95. Dkt 54, Ex. A at 2, ¶ 3a.[3] Instead of looking at defendants who were not in the same sentencing range, Professor Yang's empirical analysis looked at defendants sentenced in the Eastern District of New York who were convicted of fraud or embezzlement offenses, and who resided in the same position on the Sentencing Table (offense level 17, criminal history I). Most of those people were sentenced to probation.

We believe Professor Yang's analysis is a useful tool to achieve the goal of avoiding unwarranted sentencing disparities, and we urge the Court to consider it.

Respectfully,

CARLTON FIELDS, P.A.

/s/ Michael L. Yaeger
Michael L. Yaeger
Katelyn M. Sandoval
*Attorneys for Geoffrey Girnun*

cc: AUSA Erin E. Argo (via ECF)

---

[3] Professor Yang analyzed the sentences of 26 people in the last five years, 57 in the last 10 years, and 95 in the last fifteen years. Dkt 54, Ex. A at 3, Table 1.

4